FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 20, 2025

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| COLUMBIA RIVERKEEPER,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF QUINCY,<br><br>    Defendant. | No. 2:24-CV-00378-SAB<br><br>**CONSENT DECREE** |

Before the Court is the parties' Joint Motion for Entry of Consent Decree, ECF No. 26. Plaintiff is represented by Brian A. Knutsen and Erica L. Proulx. Defendant is represented by Devra R. Cohen, Joseph Brogan, and Lori A. Terry. The motion was considered without oral argument.

The parties notified the Court they have reached a settlement and request the Court enter the following Consent Decree in this matter.

Accordingly, **IT IS HEREBY ORDERED**:

1. The parties' Joint Motion for Entry of Consent Decree, ECF No. 26, is **GRANTED**.

2. All deadlines, motions, hearings, and the trial date are **STRICKEN**.

//

//

//

**CONSENT DECREE** * 1

3. The Court enters the Stipulated Consent Decree as follows:

## I. STIPULATIONS

1. Quincy owns and operates the Quincy Industrial Wastewater Treatment Plant located at or about 18605 Road 9 NW, Quincy, Washington 98848 ("IWTP" or "Facility"), which discharges treated industrial wastewater under National Pollutant Discharge Elimination System ("NPDES,') Permit No. WA0021067 ("Permit") issued by the Washington State Department of Ecology ("Ecology");

2. Riverkeeper issued a notice of intent to sue letter dated August 26, 2024 ("Notice Letter"), and filed a Complaint on November 4, 2024 ("Complaint"), under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, alleging that Quincy is in violation of certain terms and conditions of its Permit;

3. Riverkeeper's Complaint seeks declaratory and injunctive relief, the imposition of civil penalties, and an award of litigation expenses including attorney and expert fees;

4. Solely for the purposes of this Consent Decree, Quincy and Riverkeeper (individually a "Party" and collectively, the "Parties") stipulate that the Court has jurisdiction over the Parties and the subject matter of this action under section 505(a) of the CWA, 33 U.S.C. § 1365(a);

5. Each Party acknowledges that it obtained the advice of its own independent legal counsel before agreeing to be bound by these Stipulations and the proposed Consent Decree below;

6. The Parties agree that settlement of this matter is in the best interest of the Parties and the public and that entry of this Consent Decree without additional litigation is the most appropriate means of resolving this action;

7. The Parties stipulate to the entry of this Consent Decree without trial, adjudication, or admission of any issues of fact or law regarding the claims and

**CONSENT DECREE** * 2

allegations set forth in Riverkeeper's Notice Letter and Complaint. Quincy does not admit and expressly denies all of Riverkeeper's claims and allegations contained in the Notice Letter and Complaint;

8.  These Stipulations and the proposed Consent Decree below constitute the entire agreement between the Parties regarding Riverkeeper' s CWA citizen suit Complaint against Quincy;

9.  The Parties recognize that, pursuant to section 505(c)(3) of the CWA, 33 U.S.C. § 1365(c)(3), no consent judgment can be entered in a CWA citizen suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. Environmental Protection Agency. Therefore, upon filing of this proposed Consent Decree by the Parties, Riverkeeper will serve copies of it upon those officials; and

10. Each signatory for the parties certifies that they are fully authorized by the Party they represent to agree to these stipulations, to enter into the agreement set forth herein, and to legally bind the Party and their successors in interest to them.

## II.  ORDER AND DECREE

**THIS MATTER** came before the Court upon the Parties' Joint Motion for Entry of Consent Decree and the foregoing Stipulations of the Parties. Having considered the Stipulations and the promises set forth below, the Court hereby **ORDERS**, **ADJUDGES**, and **DECREES** as follows:

1. **Jurisdiction.** This court has jurisdiction over the Parties and the subject matter of this action pursuant to section 505(a) of the CWA, 33 U.S.C. § 1365(a).

2. **Effective Date.** This Consent Decree shall take effect on the date it is entered as an Order of the Court (the "Effective Date").

//

**CONSENT DECREE** * 3

3. **Termination Date.** This Consent Decree and all obligations under it shall terminate three (3) years after the Effective Date or upon Quincy's fulfillment of the payment obligations in Paragraphs II.7 (Environmental Benefit Projects) and II.8 (Reimbursement of Litigation Expenses) of this Consent Decree, whichever occurs later ("Termination Date"). However, if, within three (3) years from the Effective Date, Quincy either (a) discontinues the IWTP discharges or (b) transfers ownership and operation of the IWTP and transfers the Permit to one or more of the Industrial Users of the IWTP (including any affiliate entity of an industrial user), then the Termination Date shall be upon completion of the occurrence(s) or upon Quincy's fulfillment of the payment obligations in Paragraphs II.7 (Environmental Benefit Projects) and II.8 (Reimbursement of Litigation Expenses) of this Consent Decree, whichever occurs later.

4. **Applicability.** The Parties are subject to and shall abide by the terms and conditions of this Consent Decree. This Consent Decree shall inure to the benefit of, and be binding upon, the Parties and their successors, assigns, officials, agents, representatives, officers, directors, and employees. Changes in the organizational form or status of a Party shall have no effect on the binding nature of this Consent Decree or its applicability.

5. **No Admission of Liability.** This Consent Decree is a settlement of disputed facts and law. It is not an admission or adjudication regarding any allegations by Riverkeeper in the Notice Letter, or in the Complaint filed in this case, or of any fact or conclusion of law related to those allegations nor evidence of any wrongdoing or misconduct on the part of Quincy. Quincy agrees to the terms and conditions in this Consent Decree in full and complete satisfaction of all claims covered by this Consent Decree.

6. **Compliance.**

    A.    <u>Permit Compliance.</u> Quincy shall fully comply with the terms and conditions of the Permit (or any successor thereof) except that the Parties

**CONSENT DECREE** * 4

acknowledge that Quincy may continue to exceed numeric effluent limitations contained in Condition S1.A of the Permit until various corrective actions are fully implemented on or before December 31, 2026.

  B. <u>Document Share.</u> From the Effective Date through the Termination Date, Quincy shall, no later than thirty (30) days following each calendar quarter, send to Riverkeeper copies of all IWTP Permit-related documents that Quincy has transmitted to, or received from, Ecology during the previous calendar quarter. Quincy shall provide such documents via e-mail to the e-mail addresses identified in Paragraph II.11 of this Consent Decree unless Riverkeeper provides notice of a change in recipients;

  C. <u>Operations and Maintenance Manual.</u> Quincy shall prepare a revised Operations and Maintenance ("O&M") Manual for the IWTP Facility. In addition:

   i. The revised O&M Manual shall be certified by a professional engineer with HDR Engineering, Inc., Jacobs Engineering Group, Operations Management International, Inc., or another environmental engineering firm of Quincy's choosing, as reasonably certain to result in proper operation and maintenance of all facilities or systems of treatment and control (and related appurtenances), which are installed to achieve compliance with the terms and conditions of the Permit;

   ii. The revised O&M Manual shall comply with all terms and conditions of Special Condition S4 of the Permit;

   iii. The revised O&M Manual shall include a Treatment System Operating Plan ("TSOP") that complies with Special Condition S4.A.c of the Permit;

   iv. Quincy shall submit the revised O&M Manual to Ecology for review and approval, and provide Riverkeeper a copy, within one hundred eighty (180) days from the Effective Date; and

**CONSENT DECREE** * 5

     v. Quincy shall fully implement the revised O&M Manual at the Facility within one hundred twenty (120 days) from the date of Ecology's approval of the revised O&M Manual and shall notify Riverkeeper of such implementation.

  D. <u>Compliance Action Plan.</u> Subject to the provisions of Paragraph II.6.E of this Consent Decree, Quincy shall prepare and implement a Compliance Action Plan ("CAP") for the Facility. In addition:

     i. The CAP's measures shall be reasonably certain to meet the Permit's effluent limitations for biochemical oxygen demand (BOD5), dissolved oxygen, total suspended solids ("TSS"), ammonia, flow, temperature, chlorine, fecal coliform, and pH, as certified by a professional engineer with HDR Engineering, Inc., Jacobs Engineering Group, Operations Management International, Inc., or other environmental engineering firm of Quincy's choosing;

     ii. The CAP shall include the following projects and deadlines, as further detailed in Exhibit 1:

      a. Evaluate and revise pH monitoring at effluent to address compliance with pH effluent limitations by October 1, 2025;

      b. Evaluate and revise dissolved oxygen at effluent to address compliance with dissolved oxygen effluent limitations by October 1, 2025;

      c. Repair aeration system in SBR 1 by June 30, 2026;

      d. Assess and upgrade cooling towers to meet permit conditions for temperature, including

       1. Installing a temporary cooling system by October 1, 2025;

       2. Installing a permanent cooling system by October 1, 2026;

//

**CONSENT DECREE** * 6

  e. Install new chlorine probes at effluent to better control chlorination and de-chlorination by October 1, 2025;

  f. Repair and/or replace all twelve (12) SBR mixers to address compliance with ammonia effluent limitations and to improve BOD5 removal by October 1, 2026;

  g. Repair and/or replace sludge removal system on anaerobic digester to address effluent limitation compliance for TSS, BOD5, and ammonia by October 1, 2026;

  h. Install standby electrical power at tertiary facility to address effluent limitation compliance for pH, dissolved oxygen, free chlorine, and temperature by October 1, 2026;

  i. By December 1, 2025, complete a long-term facility assessment, certified by a professional engineer with HDR Engineering, Inc., or another environmental engineering firm of Quincy's choosing, as reasonably certain to bring the Facility into Permit compliance by December 31, 2026;

  iii. Quincy shall provide Riverkeeper a copy of the Facility's final and certified CAP within sixty (60) days of the effective date;

  iv. The CAP shall contain an implementation schedule that shall include the deadlines identified above and in Exhibit 1 and Quincy shall comply with that schedule. Quincy shall notify Riverkeeper of implementation of each project and/or any deviations from the implementation schedule within fourteen (14) days of completion or deviation of each project; and

  v. Quincy shall fully implement CAP by December 31, 2026.

  E. <u>Compliance Action Plan Contingency.</u> Quincy's ability and obligation under this Consent Decree to comply with Paragraph II.6.D of this Consent Decree is contingent upon Quincy securing an agreement with the

**CONSENT DECREE** * 7

Industrial Users of the IWTP to pay for the CAP upgrades. Both parties acknowledge and agree that funding for the projects required under Paragraph II.6.D must come from the Industrial Users who discharge to the IWTP facility (or any affiliate entity of an Industrial User), which funding may be offset by local, state, or federal funding. Additionally:

    i.    If Quincy is unable to obtain a funding agreement(s) with the Industrial Users who discharge to the IWTP to fund the CAP upgrades or obtain local, state, or federal funding to fund the CAP within one hundred twenty (120) days after the Effective Date, then within four hundred and eighty-five (485) days after the Effective Date Quincy shall:

    a.    Discontinue discharging wastewater from the Facility; or

    b.    Transfer ownership and operation of the IWTP and transfer the NPDES Permit to one or more of the Industrial Users who discharge into the IWTP, including nay affiliate entity of an Industrial User.

    ii.    Quincy shall provide a written notice, pursuant to the notice provisions of Paragraph II.11 of this Consent Decree, to Riverkeeper as soon as feasible and no later than one hundred thirty (130) days after the Effective Date indicating whether Quincy is able to obtain funding needed for developing and implementing the CAP and whether Quincy is able to comply with Paragraph II.6.D of this Consent Decree or will, in the alternative, discontinue discharging wastewater from the Facility or transfer ownership and operation of the IWTP and transfer the NPDES Permit to one or more of the Industrial Users (including any affiliate entity of an Industrial User) or who discharge into the IWTP as prescribed under Paragraph II.6.E.i of this Consent Decree.

7.    **Environmental Benefit Projects.** Within thirty (30) days of the Effective Date, Quincy shall make a payment in the amount of four hundred thousand dollars ($400,000) to the Confederated Tribes and Bands of Yakama

**CONSENT DECREE** * 8

Nation for one or more projects benefitting water quality and/or aquatic habitat in the Columbia River Basin, as described in Exhibit 2 to this Consent Decree. Such payment shall be made by check payable and mailed to the Confederated Tribes and Bands of Yakama Nation, P.O. Box 151, Toppenish, Washington 98948. The payment shall bear the notation "Columbia Riverkeeper/City of Quincy Clean Water Act Settlement." Quincy shall notify Riverkeeper pursuant to the notice provisions in Paragraph II.11 of this Consent Decree when Quincy makes the payment required by this paragraph.

8. **Reimbursement of Litigation Expenses.** Within thirty (30) days of the Effective Date, Quincy shall pay Riverkeeper $102,637.56 for attorneys' fees and litigation costs in this matter. Quincy shall make the payment required by this Paragraph via electronic funds transfer to an IOLTA trust account maintained by Kampmeier & Knutsen, PLLC, Riverkeeper's attorneys in this case. Within seven (7) days of the Effective Date, Riverkeeper shall, through counsel, provide to counsel for Quincy the information necessary to make the electronic funds transfer required by this Paragraph. Before finalizing the payment, Quincy or its counsel shall contact Brian Knutsen at Kampmeier & Knutsen, PLLC, to confirm via telephone the bank account information and routing number of the account designated to receive the payment required by this Paragraph. Quincy shall not direct the payment required by this Paragraph to any other bank account recipient unless the Parties seek and the Court issues an order modifying this Paragraph of this Consent Decree. Quincy shall notify Riverkeeper pursuant to the notice provisions of Paragraph II.11 of this Consent Decree when Quincy makes the payment required by this Paragraph.

9. **Release and Covenant Not to Sue.**

    A. <u>Release of Claims.</u> As of the Effective Date, Riverkeeper releases all CWA claims alleged against Quincy in Riverkeeper's Notice Letter and Complaint that accrue prior to and through the Effective Date and all other

**CONSENT DECREE * 9**

claims known or unknown that accrue prior to and through the Effective Date related to violations of the Permit that could be asserted under the CWA against Quincy, its officials, employees, consultants, or agents. These claims are released and dismissed with prejudice. Quincy's payment pursuant to paragraph II.8 of this Consent Decree will be a full and complete satisfaction of any claims Riverkeeper has or may have, either legal or equitable, known or unknown, and of any kind or nature whatsoever, for fees, expenses, and costs incurred in this lawsuit as of the Effective Date.

        B.    <u>Covenant Not to Sue.</u> The Parties recognize that Quincy may continue to exceed Permit limits while implementing the requirements of Paragraphs II.6.C-D of this Consent Decree. Accordingly, provided that Quincy provides notice under Paragraph II.6.E.ii of this Consent Decree in accordance with the CAP's schedule, Riverkeeper covenants not to sue Quincy, either in a new action or through enforcement of this Consent Decree, for any exceedances of numeric effluent limits contained in Section S1.A of the Permit that occur on or before January 31, 2027. The covenant not to sue provided by this Paragraph shall not apply if Quincy fails to obtain the necessary funding to implement the CAP or if Quincy is not in compliance with the CAP.

    10.    **Retention of Jurisdiction and Dispute Resolution.** This Court retains jurisdiction over this matter to oversee and ensure compliance with this Consent Decree. From the Effective Date through the Termination Date, the Parties may reopen this case without filing fee to apply to the Court for any further order or relief that may be necessary to enforce compliance with this Consent Decree or to resolve any dispute regarding this Consent Decree. Before seeking relief from the Court under this Paragraph, the Parties must first seek to resolve the dispute themselves, as follows:

        A.    The Party identifying or wishing to raise the issue or dispute must provide the other Party a written notice, pursuant to the notice provisions of

**CONSENT DECREE** * 10

Paragraph II.11 of this Consent Decree, detailing the nature of the issue or dispute; and

    B. Within thirty (30) days of receipt of such notice, the Parties shall meet and confer regarding the issue or dispute.

If the Parties do not resolve the dispute at that meeting or within thirty (30) days of the written notice, whichever comes first, either party may file a motion with this Court to resolve the dispute or seek any other available relief. In any action to enforce this Consent Decree, the Court shall apply the same standard applied by courts in awarding fees and costs under section 505(d) of the CWA, 33 U.S.C. § 1365(d).

  11. **Notice.** All notices and other communications regarding this Consent Decree shall be in writing and made by sending an email to the following addresses, or to such other addresses as the Parties may designate by written notice:

<u>For Plaintiff Columbia Riverkeeper:</u>

Teryn Yazdani
Columbia Riverkeeper
teryn@columbiariverkeeper.org

**With a copy to:**
Erica Proulx
Kampmeier & Knutsen, PLLC
erica@kampmeierknutsen.com

<u>For Defendant City of Quincy:</u>

Danielle Marchant
City of Quincy Attorney
Davis Arneil
617 Washington Street
Wenatchee, WA 98801
danielle@dadkp.com

**With a copy to:**

**CONSENT DECREE** * 11

Lori Terry
Devra Cohen
Joseph Brogan
Foster Garvey PC
lori.terry@foster.com
devra.cohen@foster.com
joe.brogan@foster.com

12.     **Force Majeure.** A force majeure event is any event outside of the reasonable control of Quincy that prevents or causes a delay in performing tasks required by this Consent Decree that cannot be cured by due diligence. By way of example and not limitation, force majeure events include:

   A. Acts of God, war, insurrection, or civil disturbance;

   B. Earthquakes, landslides, fire, floods;

   C. Actions or inactions of third parties over which Quincy has no or limited control;

   D. Unusually adverse weather conditions;

   E. Restraint by court order or order of public authority;

   F. Strikes;

   G. Any permit or other approval sought by Quincy from a government authority to implement any of the actions required by this Consent Decree where such approval is not granted or is delayed and where Quincy has timely and in good faith sought the permit or approval;

   H. Litigation, arbitration, or mediation that causes delay;

   I. Epidemics and pandemics; and

   J. Supply chain issues and delays.

If Quincy becomes aware of a force majeure event that causes or threatens to cause a delay in performance or prevention of performance of a task required by this Consent Decree, Quincy shall notify Riverkeeper as soon as reasonably possible, but, in any case, no later than fifteen (15) days after Quincy becomes aware of the force majeure event. In such event, the time for performance of the

**CONSENT DECREE** * 12

task will be extended for a reasonable period of time following the force majeure event.

13. **Entirety of the Agreement.** This Consent Decree constitutes the entire agreement between the parties. There are no other or further agreements, written or verbal.

14. **Voidability.** If for any reason the Court enters this Consent Decree as an Order of the Court with any different stipulations, terms, or conditions than the Consent Decree as proposed by the Parties, this Consent Decree and the settlement embodied herein shall be voidable at the sole discretion of either Party. If voided, the Parties agree to continue negotiations in good faith in any attempt to cure any objection raised by the Court to entry of this Consent Decree as proposed by the Parties.

15. **Modifications.** This Consent Decree may only be modified upon a writing signed by representatives for each party and approved by the Court.

**IT IS SO ORDERED.** The District Court Clerk is hereby directed to enter this Order and provide copies to counsel and **close** the file.

**DATED** this 20th day of October 2025.



Stan Bastian
Chief United States District Judge

**CONSENT DECREE** * 13